NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
                                                    :
WALTER A. TORMASI,                                  :
                                                    :
            Plaintiff,                              :            Civ. No. 08-4950 (AET)
                                                    :
            v.                                      :            **MEMORANDUM & ORDER**
                                                    :
GEORGE W. HAYMAN, et al.,                            :
                                                    :
            Defendants.                             :
———————————————————————:

THOMPSON, U.S.D.J.

### INTRODUCTION

      This matter comes before the Court upon the Motion to Dismiss [55] by Defendants

Robert Bucchino ("Bucchino"), James Brewin ("Brewin"), Kathleen Skinner ("Skinner"), and

Lucile Roach ("Roach"); Defendant Jason Pugh's ("Pugh") Motion to Dismiss [59]; Plaintiff's

Motion for Reconsideration [71]; and, Plaintiff's Appeal [75] from the decision of the Magistrate

Court.  This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331.  The Court has

decided the matter without oral argument, pursuant to Fed. R. Civ. P. 78.  For the reasons stated

below, the Motion to Dismiss [55] by Defendants Bucchino, Brewin, Skinner and Roach is

granted in part and denied in part; Defendant Pugh's Motion to Dismiss [59] is granted; and,

Plaintiff's Motion for Reconsideration is granted, but his request for a preliminary injunction will

be denied.

      With respect to Plaintiff's Appeal [75] of Judge Arpert's July 7, 2009 Order, the Court

has decided this matter pursuant to Fed. R. Civ. P. 72(a) and L. Civ. R. 72.1(c), and upon the

submissions of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78.  For the reasons

stated below, the Court will affirm the decision of the Magistrate Court.

BACKGROUND

Plaintiff is an inmate confined at the New Jersey State Prison (NJSP) and, at all relevant

times, has been in the custody of the New Jersey Department of Corrections (DOC).  Plaintiff's

Amended Complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983, seeks damages and

injunctive and declaratory relief for acts, committed under color of law, which allegedly deprived

Plaintiff of (1) his right to timely medical care, as guaranteed by the Eighth Amendment; (2) his

right to due process of law, as guaranteed by the Fourteenth Amendment; and (3) his right to

equal protection of the laws, as guaranteed by the Fourteenth Amendment.

Plaintiff alleges he was unsuccessful in obtaining adequate medical care for more than 21

months.  While incarcerated, Plaintiff was diagnosed with myopia–more commonly known as

nearsightedness.  Plaintiff was given prescription eyeglasses to correct his vision.  Towards the

end of 2006, Plaintiff claims his vision began to deteriorate.  On December 25, 2006, Plaintiff

filed a medical request form (MR-007) and asked to be seen by an optometrist for the purpose of

obtaining new prescription eye glasses.[1]  On January 2, 2007, Defendant Kathleen Skinner, a

nurse employed by Correctional Medical Services, Inc. (CMS), endorsed Plaintiff's MR-007

---

[1] An inmate must submit an MR-007 form in order to receive medical treatment.  The
form has three types of medical treatment options: medical; dental; and mental health.  The
inmate must indicate which type of treatment he is seeking on the form.  The form also requires
the inmate to state the reason for the requested medical treatment and provides the inmate with
the opportunity to describe his medical condition and symptoms.  A CMS employee then reviews
the MR-007 form.  If the request is reasonable, the CMS employee will endorse the request and
forward it to the proper department for scheduling of treatment.

form and forwarded his request to the CMS/NJSP medical department for appropriate optometry treatment. An appointment for Plaintiff to see the optometrist, Defendant Robert Bucchino, was scheduled for January 19, 2007. Plaintiff, however, was never informed of the appointment and, nonetheless, on January 19, 2007, he was not at the NJSP, but rather in the Somerset County Jail, where he had been temporarily remanded.

Upon his return to NJSP, Plaintiff asked several CMS nurses about his request to see a optometrist. Plaintiff maintains that he was repeatedly told that an appointment would be scheduled, but that one never was. In July 2007, Plaintiff filed an administrative grievance (DOC Form IRSF-101), detailing his inability to be seen by an optometrist. Plaintiff received a written response to his grievance in August, informing him he had missed his January 2007 appointment, and advised him to file another MR-007 form requesting an appointment with the optometrist.

On August 22, 2007, Plaintiff submitted a second MR-007 form requesting an appointment with the optometrist. On September 2, 2007, CMS Nurse Darlene Sexton[2] endorsed Plaintiff's MR-007 form and forwarded his request to the CMS/NJSP medical department, but no appointment was immediately scheduled. On September 21, 2007, Plaintiff filed a second IRSF-101 administrative grievance. Two weeks later, CMS Ombudsman Jawana Bethea[3] contacted Plaintiff. Plaintiff claims that Ms. Bethea stated that there had been a "mix up" in the CMS/NJSP medical clinic and that Plaintiff would soon be scheduled for an appointment with the optometrist as requested. When no appointment was in fact scheduled, Plaintiff appealed the

---

[2] Ms. Sexton is a named defendant in this action, however she has yet to be properly served with the Amended Complaint.

[3] Ms. Bethea is a named defendant in this action, however she has yet to be properly served with the Amended Complaint.

disposition of his administrative grievance.  Plaintiff's appeal, however, was denied by an NJSP administrator because the initial response was deemed appropriate.

Plaintiff then submitted a letter of complaint to Malaka Umrani, a CMS Administrator.[4] It is unclear, however, whether Umrani received Plaintiff's letter or whether it was received by Defendant Jason Pugh or Paula Azara,[5] both of whom are CMS Administrators.  Plaintiff's letter outlined the difficulties he incurred in securing an appointment with the optometrist.  The following week, Plaintiff submitted a similar letter of complaint to CMS Ombudsman Kathy O'Donnell.[6]  Soon thereafter, the letter was returned to Plaintiff with a handwritten notation stating that Defendant Lucile Roach, a CMS nurse and supervisor, had been notified to schedule the long overdue exam.  This notation was signed "KO".

Several weeks later, Plaintiff received a copy of a CMS memorandum dated December 19, 2007.  The memorandum, written by Ombudsman Bethea to NJSP Associate Administrator Jeffery Bell, stated that scheduling had been notified again about Plaintiff's need to see an optometrist, and that he would be seen for an eye exam as soon as possible.  When Plaintiff had still not seen the optometrist in January 2008, he sent a letter to Ombudsman Bethea.  In March 2008, Plaintiff sent another letter.  Both letters stated that, despite repeated requests, Plaintiff had yet to see the optometrist.  Plaintiff also made verbal requests to medical personnel that he be scheduled for an eye exam.

---

[4] Ms. Umrani is a named defendant in this action, however she has yet to be properly served with the Amended Complaint.

[5] Ms. Azara is a named defendant in this action, however she has yet to be properly served with the Amended Complaint.

[6] Ms. O'Donnell is a named defendant in this action, however she has yet to be properly served with the Amended Complaint.

On April 11, 2008, Dr. Bucchino performed a full eye exam on Plaintiff.  He determined that Plaintiff had 20/200 vision and prescribed new glasses.  Plaintiff claims however that Dr. Bucchino rushed through the exam and, consequently, incorrectly calculated his prescription. Plaintiff further contends that he should have been given a stronger prescription than the one that he received.  Dr. Bucchino updated Plaintiff's medical records and ordered that prescription glasses be provided to Plaintiff.

When nearly a month passed and Plaintiff had not received his new prescription glasses, Plaintiff filed another administrative grievance, an IRSF-101.  Plaintiff explained that he had been waiting for new glasses and requested that they be provided as soon as possible.  During this time, Plaintiff also made repeated verbal inquiries to CMS staff members regarding the status of his new glasses, including Defendant James Brewin, a nurse employed by CMS. Plaintiff claims that Brewin said that he would alert Nurse Roach of the delay.  On June 6, 2008, Plaintiff filed a second IRSF-101 administrative grievance; it was returned to Plaintiff with instructions that he file an MR-007 form.  On June 12, 2008, Plaintiff filed an MR-007 form, which was subsequently endorsed by Brewin, who again advised Plaintiff that he would bring the matter to Nurse Roach's attention.

Plaintiff continued to send letters of complaint to various administrators over the next several weeks.  On July 24, 2008, CMS Ombudsman Bethea came to Plaintiff's cell to speak with him.  Plaintiff claims Bethea said that there had been a problem with getting his prescription glasses, though she would not elaborate as to the nature of the problem.  She did however, inform him that Nurse Roach was responsible for resolving the matter.  In August 2008, Plaintiff requested permission from prison officials to order prescription eye glasses from an outsider provider, such as Lenscrafters, but his request was denied as against NJSP policy.

On September 5, 2008, Plaintiff saw Dr. Bucchino again.  When Plaintiff complained that he had yet to receive his glasses, which had been prescribed five months earlier, Dr. Bucchino assured him that his glasses would be ordered and that he would receive them in the near future. On September 26, 2008, Plaintiff received a new pair of glasses.  Plaintiff, however, claims that the glasses are ineffective and do not fully restore his vision.  He further claims that as a result of the delay in his receiving prescription glasses, he suffered permanent vision loss, headaches and disorientation, physical injury, and emotional distress.

Following the filing of the Amended Complaint, Plaintiff filed two motions, one seeking the appointment of pro bono counsel and the other seeking a preliminary injunction.  Plaintiff's request for a preliminary injunction was denied by this Court in an Order [62] dated June 26, 2009.  He has now filed a motion seeking reconsideration of that ruling.  Plaintiff's application for appointment of pro bono counsel was denied by Magistrate Judge Douglas E. Arpert in an Order [69] dated July 7, 2009.  Plaintiff has also appealed that decision.

Defendants Bucchino, Brewin, Skinner, Roach, and Pugh, all employees of CMS, have moved to dismiss Plaintiff's Amended Complaint, or, alternatively, for summary judgment.[7] Also before the Court are Plaintiff's Motion for Reconsideration of the Court's June 26, 2009 Order denying Plaintiff's request for a preliminary injunction, and Plaintiff's appeal of Magistrate Judge Arpert's Order dated July 7, 2009, denying without prejudice, Plaintiff's request for appointment of pro bono counsel.  For the reasons set forth below, the Motion for Reconsideration will be granted, but no preliminary injunction will be granted, and the appeal of the Magistrate Court's Order will be denied.

---

[7] All defendants are being sued in both their official and individual capacities.

DISCUSSION

A.    Standard for Motion to Dismiss

A court must dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The court's inquiry, however, "is not whether [a] plaintiff will ultimately prevail in a trial on the merits, but whether [he] should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court clarified the Rule 12(b)(6) standard in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Twombly abrogated the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief," see Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and held that "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555. Thus, the allegations in the complaint must be enough to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation." Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

To establish a valid Section 1983 claim, a plaintiff "must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him of rights, privileges or immunities secured by the Constitution." Carter v. City of Phila., 989 F.2d 117, 119 (3d Cir. 1993). Defendants have not argued that they are not state actors.

Accordingly, the only question is whether Plaintiff has sufficiently alleged that Defendants have violated his constitutional rights.

     1.      Count I: Inadequate Medical Care

Plaintiff asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him access to medical care and failing to provide him with prescription eye glasses for approximately 21 months.  Defendants claim that they were responsive to Plaintiff's needs and had no intention of causing him harm.

To establish an Eighth Amendment violation, a plaintiff must show that each defendant acted with "deliberate indifference" to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Deliberate indifference can occur in many ways, including "by denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," id. at 104-05; but it is something more than mere negligence or medical malpractice.  Id. at 105-06.  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  Giles v. Kearney, 2009 U.S. App. LEXIS 15597, at **26-27 (Jul. 15, 2009).  Thus, to state a Section 1983 claim under the Eighth Amendment, Plaintiff must sufficiently allege that each defendant, "act[ed] with deliberate indifference, [and] exposed [him] to a sufficiently substantial risk of serious damage to his future health."  Id. at *27.

Plaintiff has sufficiently alleged that his need for prescription eye glasses constitutes a serious medical need.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious") (citing Estelle, 429 U.S. at 103-04).  "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Atkinson v. Taylor, 316 F.3d 257, 273-74 (3d

Cir. 2003). In this case, not only would a lay person recognize the need to visit an optometrist when experiencing a loss of vision, but in addition, Dr. Bucchino diagnosed Plaintiff with myopia and prescribed stronger glasses for him.[8]

Nevertheless, Plaintiff has failed to state an Eighth Amendment claim against Defendants Skinner and Brewin. By Plaintiff's own admission, both Skinner and Brewin endorsed Plaintiff's MR-007 request forms. There is nothing to suggest that either Skinner or Brewin failed to forward Plaintiff's MR-007 forms to the medical department for scheduling of treatment. Indeed, Plaintiff's allegations indicate that both Skinner and Brewin were responsive, and not indifferent, to Plaintiff's requests.

Plaintiff has also failed to state a claim against Defendants Dr. Bucchino and Pugh. Plaintiff admits that he was seen by Dr. Bucchino on two occasions. On the first occasion, Dr. Bucchino diagnosed Plaintiff with myopia and prescribed new glasses for Plaintiff. Plaintiff received his prescription glasses shortly after his second visit with Dr. Bucchino. Plaintiff's chief complaint against Dr. Bucchino, that he rushed through the initial eye exam, does not rise to the level of deliberate indifference. There are no allegations that Dr. Bucchino recklessly disregarded a substantial risk to Plaintiff's health. As for Defendant Pugh, Plaintiff merely

---

[8] Although not mentioned by either party, the present case is distinguishable from Dubois v. Abode, 2004 U.S. Dist. LEXIS 28326 (D.N.J. Nov. 29, 2004), which granted summary judgment against a prisoner on his Eighth Amendment claim because he had failed to establish that his need for eye glasses was a serious medical need. Id. at **10-11. Unlike Plaintiff, the prisoner in Dubois ceased requesting an eye examination after he was informed that he would be required to pay for the examination as well as his prescription glasses. In addition, during a subsequent medical examination, the prisoner's eye sight was found to be normal and he made no complaints about his vision. Id. at *6. In this case, however, Plaintiff's allegations of repeated complaints of loss of vision, the length of time in which it took for him to receive medical attention, and Dr. Bucchino's eventual diagnosis of myopia, are sufficient at this stage of the litigation to show the seriousness of his medical need.

suggests that he may have read one of the many complaint letters sent to CMS administrators. This vague suggestion cannot substantiate a claim of deliberate indifference.

Plaintiff has, however, stated an Eighth Amendment claim against Defendant Roach. All of the allegations suggest that it was she who was responsible for both scheduling the optometry appointments as well as ensuring that Plaintiff received his prescription eye glasses. At this early stage of the proceedings, it cannot be said that Roach's alleged inaction and unresponsiveness was mere negligence, nor can Plaintiff's complaints be classified as a preference for alternative treatment. The fact that Plaintiff had no direct dealings with Defendant Roach has no bearing on his ability to state a claim against her. If Plaintiff is to be believed, his was a reasonable request for medical treatment that went unanswered for many months. While an oversight of several weeks may be written off as mere negligence, Plaintiff's allegations of months of neglect state a claim for deliberate indifference to his medical needs.[9]

### 2.    Count II: Failure to Train and Supervise

Plaintiff claims Defendants violated his Fourteenth Amendment right to due process of law because CMS personnel were inadequately or improperly trained and supervised. Plaintiff asserts that due to the absence of adequate training and supervision, CMS personnel repeatedly denied him access to medical care, and that NJSP and CMS administrators should have known that this failure to train would lead to such a result. According to Plaintiff, the negligent failure of Defendants Pugh, Bucchino, and Roach (among others), to train CMS personnel constituted

---

[9] Because deliberate indifference is essentially a factual question, and no factual development has yet to occur, it would be improper at this time to consider Defendant Roach's alternative motion for summary judgment. For that reason, the alternative motion for summary judgment will be denied. It would also be inappropriate to dismiss Plaintiff's claim for punitive damages against Defendant Roach until such a time as she can demonstrate that her actions were not motivated by an evil intent or callous indifference.

deliberate indifference to his constitutional rights and deprived him of the due process of law.

Defendants have made no response to this assertion, but it is clear that Plaintiff has not stated a claim for relief under the Due Process Clause of the Fourteenth Amendment.  "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law."  Burns v. Pa. Dep't of Corr., 544 F.3d 279, 285 (3d Cir. 2008).  The Amended Complaint makes no allegations of any impairment of a protected interest.

Nor has Plaintiff sufficiently alleged that any of these three defendants may be liable on a failure to train theory.  The Amended Complaint contains only the vague assertion that CMS personnel were improperly trained and supervised, but no specific allegations as to the alleged involvement of Defendants Pugh, Bucchino, Roach, or any other Defendant, in the deficient training or supervision of employees.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Accordingly, Count II of the Amended Complaint will be dismissed against all Defendants.

      3.      Count III: Equal Protection

Finally, Plaintiff asserts that he intentionally received a lower standard of care than similarly situated inmates in violation of his Fourteenth Amendment right to equal protection.  Plaintiff is not a member of a protected class, so presumably he would argue that other inmates received much more timely and appropriate care in response to their requests for medical treatment.  Equal protection claims can be predicated on such a "class of one" theory, "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v.

Olech, 528 U.S. 562, 564 (2000).  Indeed, "the purpose of the equal protection clause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination."  Id. (citations omitted).

The Amended Complaint can be read as successfully stating an equal protection claim against Defendant Roach.[10]   The implicit suggestion of the Amended Complaint is that Roach, who was responsible for scheduling appointments with the optometrist, arbitrarily denied Plaintiff access to medical care while dispensing it to other inmates.  Defendants, for their part, have offered no rational explanation for the allegedly disparate treatment.  Although Plaintiff's equal protection claim has survived the motion to dismiss, to ultimately prevail, Plaintiff must prove that he was in fact treated differently from other inmates, and without any rational justification for the difference in treatment.  See Ferrone v. Onorato, 298 Fed. Appx. 190, 196 (3d Cir. 2008).

B.      Motion for Reconsideration

In its June 26, 2009 Order, the Court denied Plaintiff's request for a preliminary injunction that would allow him to receive medical treatment outside the NJSP from Saint Francis Medical Center because Plaintiff had not shown that in the absence of the injunction, he would suffer irreparable injury.  See Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000) ("A court may not grant [preliminary] injunctive relief without satisfying [the irreparable harm and likelihood of success on the merits] requirements, regardless of what the equities seem to require.").  Plaintiff has moved for reconsideration of the June 26th Order, arguing that

---

[10] No equal protection claim has been stated against Defendants Skinner, Brewin, Bucchino, or Pugh for reasons similar to those cited for the lack of an Eighth Amendment claim; namely that the Amended Complaint does not allege that these defendants treated Plaintiff improperly or in a discriminatory manner.

reconsideration is necessary because this Court failed to consider the arguments made in the reply brief to his initial motion.  Plaintiff asserts that the Court could not have considered his reply brief because the Court's Order was entered on June 26, 2009, several days before his reply was received on July 2, 2009.  In addition, Plaintiff points out that the Order was entered a week before the scheduled return date of the motion, which was set by the Court as July 6, 2009.

L. Civ. R. 7.1(i) permits a party to seek reconsideration of an order or judgment when the party believes the judge has "overlooked" an important issue or controlling decision; but "it is well established in this district that a motion for reconsideration is an extremely limited procedural vehicle," Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992).  In order for reconsideration to be granted, the party must establish that either (1) there has been a change in the controlling law; (2) the existence of new evidence that was not previously available; or (3) there is a "need to correct clear error of law or prevent manifest injustice." North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

In this case, because the Order denying the preliminary injunction was issued before the return date, Plaintiff's Motion for Reconsideration will be granted so that this Court can consider the arguments made in Plaintiff's reply brief.  Plaintiff maintains that he has demonstrated immediate, irreparable injury through the allegations of the Amended Complaint, which asserts that he has suffered increased and permanent vision loss as a result of Defendants' failure to provide him with suitable prescription eye glasses.  Plaintiff submits that his vision will continue to deteriorate until he receives a proper prescription and thus he is at risk for future injury.

Even taking these arguments into consideration, Plaintiff has not established (1) that he is "likely to experience irreparable harm without an injunction" or (2) that he is "reasonably likely to succeed on the merits." Adams, 204 F.3d at 484.  Although Plaintiff has raised the possibility

of continued loss of vision, he still has not fulfilled the irreparable harm requirement because he has not "demonstrate[d] a significant risk that he . . . will experience harm that cannot adequately be compensated after the fact by monetary damages." Id. at 484-85. Not only is it unclear whether Plaintiff's loss of vision would be curtailed by stronger prescription glasses, but Plaintiff also admitted in his reply brief that there is still an opportunity for vision recovery. Accordingly, the June 26th Order denying Plaintiff's Motion for a Preliminary Injunction will be affirmed.

C.      Denial of Pro Bono Counsel

In its July 7, 2009 Order, the Magistrate Judge, Douglas E. Arpert, denied without prejudice Plaintiff's request for appointment of pro bono counsel. The Order assumed, for the purpose of the application, that Plaintiff had satisfied the threshold requirement of presenting a meritorious claim. Then, following the factors listed in Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993), the Order found that Plaintiff's case did not appear to be either factually or legally complex; that the denial of counsel would not create the likelihood that Plaintiff would incur substantial prejudice or loss of his due process rights; and that no other special circumstances warranted the appointment of counsel. The Order did note, however, that the Court would continue to assess Plaintiff's continued ability to present his case, and should the need for counsel arise, the Court would make the appointment sua sponte.

Plaintiff now asks this Court to vacate the Magistrate Judge's Order and have counsel appointed on his behalf. Under L. Civ. R. 72.1(c)(1)(A), a party may appeal a Magistrate Judge's determination of a non-dispositive matter. A Magistrate Judge's decision, however, will "be overturned only when the ruling was clearly erroneous or contrary to law." Singer Mgmt. Consultants v. Milgram, 608 F. Supp. 2d 607, 611 (D.N.J. 2009). "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly

-14-

erroneous or contrary to law." Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A

ruling is contrary to law "if the magistrate judge has misinterpreted or misapplied applicable

law," whereas a finding is clearly erroneous when the reviewing court "is left with the definite

and firm conviction that a mistake has been committed." Singer Mgmt. Consultants, 608 F.

Supp. 2d at 611-12.

Plaintiff has not demonstrated that the July 7th Order was either clearly erroneous or

contrary to law. Indeed, Plaintiff appears to be seeking a *de novo* review of the Magistrate

Judge's decision by arguing that the Magistrate Judge failed to consider a supplemental

declaration, which further described Plaintiff's jaw dysfunction. Plaintiff maintained before the

Magistrate Judge, and again in the instant appeal, that he requires the assistance of counsel

because he suffers from lock jaw and wears an orthodontic device that prevents him from

speaking. Plaintiff also submits that he cannot afford to retain an attorney on his own. *De novo*

review, however, is neither permitted nor necessary.

As the July 7th Order described, a district court must assess, as a threshold matter,

"whether the [plaintiff's] case has some arguable merit in fact and law." Montgomery v.

Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Tabron, 6 F.3d at 155). Once this threshold

hurdle has been overcome, there are a number of factors that a court can consider before ruling

on a request for appointed counsel. These factors include: (1) the plaintiff's ability to present his

or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual

investigations will be necessary and the ability of the plaintiff to pursue investigation; (4) the

plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which the case is

likely to turn on credibility determinations; and (6) whether the case will require testimony from

expert witnesses. Id. (citing Tabron, 6 F.3d at 155-57). See also Parham v. Johnson, 126 F.3d

454, 457-58 (3d Cir. 1997).

This list of factors is not exhaustive, as a district court has broad discretion to determine

whether to appoint counsel in a civil case.  Montgomery, at 498-99.  There is no statutory or

constitutional right to appointed counsel in civil cases; Congress has merely given district courts

the "statutory authority to 'request' appointed counsel for indigent civil litigants."  Id. at 498.

See also 28 U.S.C. § 1915(e).

In this case, the Magistrate Judge did not abuse his discretion by refusing to appoint

counsel at this stage of the litigation.  The previous discussion indicates that Plaintiff's Eighth

Amendment and Equal Protection claims have some arguable merit in fact and law; but, in

addition to the reasons cited by the Magistrate Judge, Plaintiff has shown himself to be more than

capable of presenting cogent arguments in support of his Complaint, and to date, has had no

difficulty with complying with the rules of this Court.  "[V]olunteer lawyer time is a precious

commodity," Montgomery, 294 F.3d at 499, and there is no reason yet to dispense this valuable

resource in this case.  However, if this case continues to progress, appointment of pro bono

counsel may become prudent and necessary in the interest of justice.  See id. at 505 (finding that

the district court abused its discretion in refusing to appoint counsel when it became apparent

that the appointment of counsel would have been appropriate).

<u>CONCLUSION</u>

For the reasons given above, and for good cause shown,

It is on this 9th day of September, 2009,

ORDERED that the Motion to Dismiss [55] by Defendants Robert Bucchino, James

Brewin, Kathleen Skinner is GRANTED; and it is further

ORDERED that the Motion to Dismiss [55] by Defendant Lucile Roach is GRANTED as

to Count II of the Amended Complaint; and it is further

ORDERED that the Motion to Dismiss [55] by Defendant Lucile Roach is DENIED as to Counts I and III of the Amended Complaint; and it is further

ORDERED that Defendant Jason Pugh's Motion to Dismiss [59] is GRANTED; and it is further

ORDERED that Plaintiff Walter Tormasi's Motion for Reconsideration [71] is GRANTED; and it is further

ORDERED that the Court's June 26, 2009 Order [62] denying Plaintiff's Motion for a Preliminary Injunction is AFFIRMED; and it is further

ORDERED that Plaintiff Walter Tormasi's Appeal [75] of the Magistrate Court's Order is DENIED; and it is further

ORDERED that the Magistrate Court's Order [69] is AFFIRMED.


                                                    s/ Anne E. Thompson
                                          ANNE E. THOMPSON, U.S.D.J.

-17-