NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Walter A. TORMASI,

    Plaintiff,

v.

George W. HAYMAN, et al.,

    Defendants.

Civ. No. 08-4950

OPINION & ORDER

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon the following motions: Plaintiff's Motion for Partial Summary Judgment [docket # 172], Defendant Jason Pugh's Motion to Dismiss or Alternatively for Summary Judgment [177], Defendant Pugh's Motion to Strike Plaintiff's Sur-Reply [198], and Plaintiff's Cross Motion for an Order Reassigning Motion to Strike [207].  The Court has decided the motions upon consideration of the parties' written submissions and without holding oral argument.  For the reasons given below, Plaintiff's Motion for Partial Summary Judgment is denied, Defendant Pugh's Motion to Dismiss or Alternatively for Summary Judgment is granted in part and denied in part, Defendant Azara's Motion to Dismiss is granted, Defendant Azara's Motion for Summary Judgment is denied without prejudice as moot, and Defendant Pugh's Motion to Strike is denied as moot.

BACKGROUND

The following allegations, which are laid out in Plaintiff's Third Amended Complaint [159], are accepted as true for the purpose of deciding these motions.

Plaintiff is an inmate confined at New Jersey State Prison ("NJSP") by the New Jersey Department of Corrections ("DOC").  (3d Am. Compl. ¶ 3.)  While confined at NJSP, personnel working for Correctional Medical Services, Inc. ("CMS")—a business contracted with the responsibility of providing medical services to NJSP—diagnosed Plaintiff with nearsightedness.  (*Id.* ¶¶ 4(e), 7.)  Several years later, in December 2006, Plaintiff began experiencing further vision loss, and he submitted a medical request seeking optometry services. (*Id.* ¶¶ 7, 10.)  CMS personnel are responsible for processing such requests, but they must also refer the requests to DOC personnel for scheduling purposes.  (*Id.* ¶¶ 9(c), 9(d).)  On January 2, 2007 Catherine Skinner, a CMS-employed nurse, endorsed Plaintiff's request and referred the matter to the CMS/NJSP medical department for optometry treatment.  (*Id.* ¶ 11.)  Plaintiff was scheduled for an optometry appointment, but he missed the appointment because he was remanded to Somerset County Jail at the time.  (*Id.* ¶ 12.)  During March and May 2007, Plaintiff made verbal inquiries about his medical request to unidentified CMS employees, who told him he would get an optometry examination.  (*Id.* ¶ 13.)  Then in July, not having had his exam, Plaintiff submitted a grievance to DOC.  (*Id.* ¶ 14.)  He received a response in August, which advised him to file another medical request.  (*Id.* ¶ 15.)  Plaintiff complied, and the new request was again endorsed—this time by Darlene Sexton, another nurse—and referred to the medical department in early September 2007.  (*Id.* ¶¶ 16-17.)  Plaintiff submitted another grievance in late September, which prompted a response from Defendant Jawana Bethea—the CMS Ombudsman—explaining that there had been a "mix up" and that Plaintiff would now be scheduled for an optometry appointment.  (*Id.* ¶¶ 18-19.)  On October 27, Plaintiff appealed this response to the prison administration, and the appeal was denied.  (*Id.* ¶¶ 20-21.)

On November 5, Plaintiff submitted a letter to Defendant Malaka Umrani, the CMS hospital administrator, and this letter was later forwarded to Defendants Jason Pugh and Paula Azara—Umrani's successors as hospital administrator. (*Id*. ¶ 22.) In this letter, Plaintiff explained his failed efforts to see an optometrist. (*Id.*) A little over a week later, he submitted a similar letter to Kathy O'Donnell, a CMS Ombudsman. (*Id*. ¶¶ 4(j), 23.) He received a response from O'Donnell, who informed him that Defendant Lucile Roach, a CMS Nurse, would schedule his "long overdue exam." (*Id*. ¶ 23.) In mid-December 2007, Plaintiff received a copy of an official CMS memorandum stating that Plaintiff would be seen for an eye exam as soon as scheduling would permit. (*Id*. ¶ 24.) However, the eye exam was not scheduled until April 11, 2008, and in the interim Plaintiff submitted two more grievance letters to Defendant Bethea and made multiple verbal complaints. (*Id*. ¶¶ 25-28.)

On April 11, Robert A. Bucchino—the CMS optometrist—conducted an examination of Plaintiff and wrote Plaintiff a prescription for new eyeglasses. (*Id*. ¶ 28.) Plaintiff alleges that this examination was done incorrectly and that as a result the prescription was not appropriate for his condition. (*Id.*) Four weeks after the examination, Plaintiff filed an administrative grievance complaining that he had not yet received his eyeglasses. (*Id*. ¶ 30.) He made several verbal complaints the following month and then filed another grievance in June 2008. (*Id*. ¶ 31-32.) He received a response on June 10, directing him to seek redress through the medical request system rather than the administrative grievance system. (*Id*. ¶ 33.) Plaintiff complied, and the request was endorsed. (*Id*. ¶¶ 34-35.) Then in early July, Plaintiff sent another letter to Defendant Umrani (which was again forwarded to Defendants Pugh and Azara) and two more letters to Defendant Bethea. (*Id*. ¶¶ 36, 38.) Bethea came by Plaintiff's cell on July 24, admitted there had been a problem with producing Plaintiff's eyeglasses, and told Plaintiff that Defendant

Roach was responsible for the matter.  (*Id.* at ¶ 39.)  Plaintiff again sent letters to Defendants Umrani (forwarded to Pugh and Azara) and Bethea and submitted another administrative grievance in August 2008.  (*Id.* ¶¶ 40-42.)  Then on September 5, Plaintiff again met with Bucchino, who assured him that he would receive his eyeglasses in the near future.  (*Id.* at ¶ 43.)  Finally, on September 26, 2008, Plaintiff received his prescription eyeglasses.  (*Id.* ¶ 44.)  However, Plaintiff found the eyeglasses were the wrong prescription and were hence ineffective. (*Id.*)

Plaintiff claims that Defendants' failure to give him an eye exam and a pair of functional eyeglasses has resulted in permanent loss of vision and physical injury to his eye.  (*Id.* ¶ 45.) This loss of vision is allegedly responsible for dizziness, headaches, disorientation, and loss of equilibrium which caused Plaintiff to fall and injure himself.  (*Id.*)  These physical injuries have in turn caused emotional distress.  (*Id.*)

Plaintiff instituted this lawsuit on October 7, 2008.  Extended motion practice has resulted in the dismissal of several defendants and the filing of, most recently, a Third Amended Complaint on February 23, 2010.  Plaintiff now seeks partial summary judgment, and two defendants seek dismissal of the claims against them.

## ANALYSIS

### I. Standard of Review

A defendant may, in lieu of filing an answer, move to dismiss a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  By rule, a "claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Therefore, if a complaint does not "show[] that the pleader is entitled to relief" it "fails to state a claim" and should be dismissed.

4

In order to show an entitlement to relief, a plaintiff must plead sufficient factual matter to enable a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As the Third Circuit has noted, this requires the Court to undertake a two-step analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949-50). At step one, the Court sets aside any legal conclusions and "recitals of elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. At step two, the Court accepts the remaining allegations as true and assesses whether or not they support a reasonable inference that the defendant is liable. *Id.* Rather than alleging facts that are "'merely consistent with' a defendant's liability," the complaint must allege facts that, if true, "give rise to an entitlement to relief." *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, an inference of liability is not reasonable—and thus dismissal is required—if the factual allegations in the complaint are more likely explained by lawful behavior than unlawful behavior. *Id.* at 1950.

In performing this analysis, a judge may only assess the plausibility of the plaintiff's legal claims in light of the facts alleged. The judge may not assess the plausibility of the alleged facts themselves. The Court must accept well-pleaded facts as true (*id.*), even if "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

II. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for Partial Summary Judgment on three issues: whether his medical condition is serious enough to trigger Eighth Amendment protection, whether he properly exhausted administrative remedies prior to filing this lawsuit as required by the Prisoner Litigation Reform Act, and whether he sustained physical injury as a result of his medical condition.  Defendant Azara argues that Plaintiff's motion should be denied as premature because discovery has not concluded in this matter.[1]  Plaintiff counters that Azara's arguments in this regard are insufficient because Azara does not state with particularity what information she seeks to uncover and how that information would preclude summary judgment.  Plaintiff further contends that deferral of a summary judgment motion must be sought by formal motion and supporting affidavit.

While Azara has not filed a formal motion and supporting affidavit requesting that Plaintiff's motion be deferred, the Court will nonetheless grant her request because it believes that discovery should proceed before summary judgment is sought or rendered.  Plaintiff supports his summary judgment motion in substantial part by relying on his own sworn statements as evidence.  Given the centrality of Plaintiff's own testimony to this motion, Plaintiff's answers to interrogatories and his deposition testimony would clearly be relevant to the motion's disposition.  Therefore, Defendants should have the benefit of Plaintiff's deposition before they are required to oppose Plaintiff's summary judgment motions.  *See Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion.").  Defendant Azara clearly articulated these concerns in her opposition brief, and the Court will not

---

[1] Since filing her opposition, Defendant Azara has withdrawn her own motions to dismiss and for summary judgment.  The Court will nonetheless consider her requests to defer Plaintiff's summary judgment motions, as other parties may have relied on Azara's arguments, and the Court finds Azara's arguments well taken.

penalize Azara for her technical failure to raise them in a formal Rule 56(f) motion. Accordingly, Plaintiff's Motion for Partial Summary Judgment will be denied.

   III. Defendant Pugh's Motion to Dismiss and related Motion to Strike

Plaintiff has made claims against Pugh under both the Eighth and Fourteenth Amendments.  Pugh has moved to dismiss these claims under Fed. R. Civ. P. 12(b)(6).  Pugh also requests, in the alternative, summary judgment under Fed. R. Civ. P. 56.  However, Pugh has not introduced any factual evidence in support of summary judgment, and furthermore, little discovery, if any, has been completed.  Accordingly, the Court will consider this motion only as a motion to dismiss, without prejudice to Defendant Pugh's freedom to bring a motion for summary judgment at the conclusion of discovery.

   A. Plaintiff's Eighth Amendment Claim Against Pugh

To establish an Eighth Amendment violation in this context, a plaintiff must show that each defendant acted with "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Deliberate indifference is akin to criminal recklessness, and it exists when the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Specific examples of deliberate indifference include situations "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Negligence or medical malpractice does not of itself qualify as deliberate indifference (*Estelle*, 429 U.S. at 105-06), and

"mere disagreement over acceptable treatment" does not amount to a constitutional violation. (*White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990)). A medical need is only sufficiently "serious" to trigger the protection of the Eighth Amendment if it has been diagnosed by a physician as in need of treatment or if it is so obvious that even a layperson would recognize that a doctor's attention is required. *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003).

      Plaintiff's Third Amended Complaint states a claim for Eighth Amendment violations against Defendant Pugh. Plaintiff alleges that he wrote letters complaining of his medical problems to Defendant Umrani and that these letters were forwarded on to Defendant Pugh. Defendant contests the plausibility of these assertions, but on a motion to dismiss, the Court is bound to accept as true all factual allegations. If it is accepted as true that Defendant Pugh read Plaintiff's letters to Defendant Umrani, it is plausible to infer that Pugh would have been familiar with Plaintiff's medical situation. Given Pugh's position as hospital administrator, it is also plausible to infer that he would have had supervisory responsibility for those individuals who were directly handling Plaintiff's requests. *See A.M. ex rel J.M.K. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (holding that a supervisor may be held liable for constitutional violations "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). Therefore, it is at least plausible to infer from Plaintiff's allegations that Plaintiff had serious medical needs related to his myopia, that Pugh was aware of these needs, that Pugh had supervisory authority over those medical personnel who were directly responsible for Plaintiff, and that Pugh failed to intervene in order to ensure Plaintiff received necessary medical care. This successfully states an Eighth Amendment claim against Defendant Pugh.

### B. Plaintiff's Fourteenth Amendment Claim Against Pugh

To establish an Equal Protection Clause violation, a Plaintiff must either identify a class of persons which Pugh discriminated against or else proceed on a "class of one" theory. Since Plaintiff has not identified a class which Pugh allegedly discriminated against, he must be proceeding on a "class of one" theory, "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The "class of one" theory is founded on the notion that "the purpose of the equal protection clause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Id.* (citations omitted).

In this case, Plaintiff has failed to state a claim under the Fourteenth Amendment because he has not alleged facts showing that he was treated differently from any other similarly situated person. His equal protection claim against Pugh will accordingly be dismissed.

### C. Plaintiff's Request for Punitive Damages

Pugh also moves to dismiss Plaintiff's request for punitive damages. In a civil rights case brought under 42 U.S.C. § 1983, punitive damages may be assessed against a defendant who acts with "reckless or callous disregard for [a] plaintiff's rights" or who violates those rights intentionally. *Smith v. Wade*, 461 U.S. 30, 51 (1983). At this stage in the litigation, before a substantial factual record has been developed, it would be premature to determine what damages are available. Therefore, this Court will deny Pugh's Motion to Dismiss Plaintiff's request for punitive damages.

### D. Plaintiff's Supplemental Brief and Defendant Pugh's Motion to Strike

On June 3, 2010, Plaintiff submitted a supplemental brief in opposition to Defendant Pugh's Motion to Dismiss. In that brief, Plaintiff seeks to introduce a certification executed by Defendant Azara, which he believes supports his arguments in opposition to Pugh's motion to dismiss. Pugh has moved to strike this brief, arguing it is an unapproved sur-reply that violates the local civil rules. The Court does not find consideration of Azara's certification necessary in order to resolve Pugh's Motion to Dismiss. Therefore, Pugh's Motion to Strike will be denied as moot.

The Court notes that Plaintiff filed a motion for this motion to be reassigned from the Magistrate Judge to the District Judge. As this motion is presently assigned to the District Judge, Plaintiff's motion will be denied as moot.

## CONCLUSION

For the foregoing reasons, IT IS, this 6th day of July,

ORDERED that Plaintiff's Motion for Partial Summary Judgment [docket # 172] is DENIED without prejudice; and it is further

ORDERED that Defendant Jason Pugh's Motion to Dismiss or Alternatively for Summary Judgment [177] is GRANTED IN PART and DENIED IN PART, without prejudice to Pugh's ability to file another motion for summary judgment at the close of discovery; and it is further

ORDERED that Plaintiff's Equal Protection claim against Defendant Pugh is DISMISSED without prejudice; and it is further

ORDERED that Defendant Pugh's Motion to Strike Plaintiff's Sur-Reply [198] is DENIED as moot; and it is further

ORDERED that Plaintiff's Cross Motion for an Order Reassigning Motion to Strike [207] is DENIED as moot.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.