NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Walter A. TORMASI,

    Plaintiff,

v.

Lucile ROACH,

    Defendant.

Civ. No. 08-4950

OPINION

THOMPSON, U.S.D.J.

    This matter has come before the Court on Defendant Lucile Roach's Motion for Summary Judgment [docket #s 547, 550].  Plaintiff Walter Tormasi opposes this motion [551].  In addition, Roach in her reply brief requests sanctions for certain alleged mischaracterizations made by Plaintiff in his opposition brief [557].  The Court has reached a decision after considering the submissions of the parties and without oral arguments pursuant to Federal Rule of Civil Procedure 78(b).  For the following reasons, both Defendant's Motion for Summary Judgment and Defendant's request for sanctions will be denied.

I.    BACKGROUND

    This dispute arises out of the alleged failure of certain Defendants—including the only remaining Defendant, Lucile Roach—to provide appropriate medical care for Plaintiff, who is currently incarcerated at New Jersey State Prison.  For purposes of this motion, the Court assumes the parties' familiarity with the factual background of this case, which has been detailed in numerous opinions by this Court as well as by the Third Circuit.  This Court originally granted summary judgment in favor of all Defendants on March 25, 2011 [446].  Thereafter, Plaintiff filed a motion for reconsideration, which the Court subsequently denied [452].  Plaintiff then

1

filed an appeal only as to the Court's decision regarding Defendants Roach and Jawana Bethea. The United States Court of Appeal for the Third Circuit affirmed this Court's decision granting summary judgment in favor of Bethea but vacated this Court's decision granting summary judgment in favor of Roach [474]. *See Tormasi v. Hayman*, 542 F. App'x 203 (3d Cir. Nov. 21, 2011) (per curiam). Specifically, the Third Circuit held that a reasonable jury could conclude that Roach acted with deliberate indifference. *See id.* at 207. On remand, Plaintiff was appointed counsel and discovery was re-opened for a limited period. Roach thereafter requested permission to file a second motion for summary judgment based upon evidence that came to light during this additional period of discovery. The Court granted this request.

## II.     LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex,* 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323–24.

III.   ANALYSIS

   A. Summary Judgment

Roach makes several arguments as to why summary judgment should be granted in her favor following remand from the Third Circuit. First, Roach continues to argue that she did not have the capacity to schedule appoints for the optometry clinic. Second, Roach argues for the first time in this case that Plaintiff was continuously scheduled for optometry appointments on a weekly basis from August 2007 through April 2008 and that he was prevented from attending these appointments because of his status as a "close custody" inmate. Because there are still factual disputes at issue in this case that are material to the issue of deliberate indifference,[1] Defendant's arguments must be rejected.

> In vacating this Court's earlier grant of summary judgment, the Third Circuit stated:
>
> We believe, viewing all inferences in favor of Tormasi, that a reasonable jury would be able to infer deliberate indifference on [Roach's] part. We agree with the District Court that the delay between Tormasi's December 2006 medical request and his August 2007 request, which resulted from a missed appointment, does not reflect deliberate indifference, even if Roach could have (or should have) tracked down Tormasi when he did not show up. Nevertheless, it is apparent that Roach was notified of the "long overdue" appointment in November 2007 and that, in early 2008, she was twice put on notice that Tormasi was experiencing serious consequences as a result of his blurry vision. When Tormasi failed to

---

[1] Defendant has also argued in her reply brief that Plaintiff has not presented evidence of a serious medical need. *See* (Def.'s Reply Br. at 1–3). This argument has already been rejected by the Third Circuit, which stated the following: "Tormasi's vision was significantly blurred, resulting in dizziness and imbalance that caused him to fall and walk into objects. On one occasion, he fell due to his inability to see and dislocated his jaw. Under such circumstances, a jury could find that Tormasi's optometry needs were serious. Furthermore, *we reject appellees' suggestion that Tormasi cannot establish the seriousness of his medical needs due to failure to provide expert testimony*. Many of Tormasi's injuries—dizziness, light-headedness, falling and sustaining physical injury—can easily be understood by a layperson without the need for an expert." *Tormasi,* 452 F. App'x at 206 (citations omitted) (emphasis added). Moreover, these arguments are procedurally deficient because they were not made in Defendant's opening brief. *See generally Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief.").

> receive his glasses after the April 2008 appointment, Bethea repeatedly notified Roach of the problem. Although the record reflects that Roach forwarded Tormasi's January and March 2008 letters to her supervisors, there is no indication that she did anything in response to Bethea's repeated communications that Tormasi needed an appointment.
>
> As a supervisor in the optometry clinic, Roach's responsibilities included calling inmates into the unit to be seen by the optometrist based on the schedule. Regardless of whether Roach was responsible for actually scheduling optometry appointments—a fact that the parties dispute—the record reflects that she could recommend that an inmate be placed on the scheduling roster when special circumstances existed. Yet there is no indication that Roach made any such recommendation, or did anything at all, in response to Bethea's notifications, which occurred after she was already aware that Tormasi was at risk of serious harm because he was falling and walking into objects as a result of his blurred vision. Additionally, the record provides no explanation whatsoever as to the causes of the "mix ups" and delays that prevented the scheduling of a simple eye examination. A reasonable jury could therefore infer that Roach ignored the situation to the point of deliberate indifference. Furthermore, a jury could infer that, as the supervisor tasked with tracking inmates reporting for optometry appointments, Roach was aware as the months passed that Tormasi had not received the care that she knew he needed. While a finder of fact might conclude that Roach was guilty of negligence at most, we cannot say on the record before us that a reasonable fact-finder could not find deliberate indifference.

*Tormasi*, 452 F. App'x at 207–08 (citations omitted).

The only evidence presented by Defendant as proof that she did not have the ability to schedule appointments is her own testimony and that of her co-workers during deposition. Plaintiff, on the other hand, has presented several pieces of evidence indicating that Defendant had the authority to schedule optometry appointments. For example, there are internal Department of Corrections records that are electronically signed by Defendant Roach indicating that her job title is HSTII. *See* (Tormasi Decl., Ex. A, at NJDOC00292). Defendant testified that this document contained her unique electronic signature and that HSTII stood for Health Service Tech II. *See* (Brown Cert., Ex. C, at 112:20–113:4). Internal documents from Correctional Medical Services, Inc., Defendant's employer, state that the performance expectations of a Health Service Technician include "schedule[ing] appointments." (Link Decl., Ex. C, at 0010/0024).

This alone is enough to create a material question of fact more appropriately decided by a jury. Moreover, Defendant previously moved for summary judgment arguing that she "was the Supervisor of Special Clinics/Labs, not the scheduler," (Def.'s First Mot. for Summary Judgment Br., at 43) [422-4], but during a deposition taken post-remand, Defendant admitted that she had never held this position, *see* (Brown Cert., Ex. C, at 23:10–24). A jury could therefore question Defendant's credibility. *See In re Nat'l Smelting of N.J., Inc. Bondholders' Litig.*, 722 F. Supp. 152, 164 (D.N.J. 1989) ("[T]he inconsistencies contained in [] sworn submissions . . . raise questions of credibility."). "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999). Plaintiff has presented additional evidence indicating that Defendant Roach could schedule appointments. But this does not need to be re-hashed at length here; suffice it to say that material questions of fact must still be resolved.

Roach next argues that it was Plaintiff's status as a "close custody" inmate that prevented him attending scheduled optometry appointments during the relevant period. Simply put, there is no evidence indicative of this other than Plaintiff's own deposition testimony, and the documentary evidence presented by Plaintiff completely undercuts this contention. *See Waskovich v. Morgano,* 2 F.3d 1292, 1296 (3d Cir. 1993) (deposition testimony may be relied upon without weighing the witnesses' credibility only where there is no contradictory evidence presented). For example, and perhaps most importantly, the New Jersey State Prison Traffic Control Logs show no record of Plaintiff being scheduled for an optometry appointment during the relevant timeframe. *See generally* (Link Decl., Ex. A (not showing scheduling entries for Plaintiff on the Traffic Control Log)); *see also* (Brown Cert., Ex. C, at 41:11–42:5; 47:23–48:2 (Defendant

5

testifying that once a scheduler makes an appointment, the inmate is automatically placed in the Traffic Control Log)). Therefore, Defendant has not satisfied her burden in establishing that summary judgment is appropriate. Accordingly, Defendant's motion must be denied.

### B. Request for Sanctions

Lastly, Defendant's request for sanctions cannot be granted. This request is procedurally deficient in that it was not, as Rule 11 requires, "made separately from any other motion." FED. R. CIV. P. 11(b)(2). This alone is sufficient to deny this request. The Court notes, however, that it believes that this request to be unwarranted based on the merits as well.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [547, 550] is denied. Defendant's request for sanctions is similarly denied. An appropriate Order will follow.

                                                  */s/ Anne E. Thompson*
                                                  ANNE E. THOMPSON, U.S.D.J.

Date: September 19, 2012